# Imperial Cotton Seed Oil Co. *v.* Shanks.

## *Assumpsit.*

(Decided April 9, 1912. 58 South. 390.)

1. *Agriculture; Sale of Fertilizers; Tags; Cotton Seed Meal.*— The sale of fertilizer as regulated by secs. 24-48, is not applicable to cotton seed meal, as sec. 45 exempts meal; the sale of meal is regulated by sections 49 and 50, Code 1907. Hence, in an action for the price of cotton seed meal a plea alleging the invalidity of the sale of cotton seed meal because the bags are not tagged as required by section 28, thus rendering the sale an offense under section 6881, Code 1907, is bad and subject to demurrer.

2. *Constitutional Law; Determination; Necessity.*—Courts will never pass on the constitutionality of a statute unless necessary to the determination of the cause.

3. *Same; Construction.*—Courts will never hold a statute unconstitutional if such a construction can be reasonably avoided.

APPEAL from Selma City Court.

Heard before Hon. J. W. MABRY.

Assumpsit by the Imperial Cotton Seed Oil Company against Phillip T. Shanks. Judgment for defendant and plaintiff appeals. Reversed and remanded.

REESE & REESE, for appellant. The law governing the sale of fertilizer will be found in sections 24 to 48, Code 1907. By section 45, cotton seed meal is exempt, and its regulations will be found in sections 49 and 50. These statutes mean what they say and leave nothing for the field of intendment, implication or otherwise.— *Bartlett v. Morrison,* 9 Port. 266; 50 Ala. 365; 89 Ala. 161; 2 Cranch. 358. Sec. 5, Acts 1909, 268, simply requires that cotton seed meal be registered, and does not have the effect of repealing sec. 45 above referred to.— 76 Ala. 270; 76 Ala. 413; 78 Ala. 413; 160 Ala. 168. A violation of the statute would be criminal, and hence, the statutes must be strictly construed, and not extend-

ed beyond a clear import of the language used.—36 Cyc. 1189; 30 Ala. 591; 62 Ala. 197; 88 Ala. 110; 51 South. 159. The word "registered" simply means "recorded." —*Edinburgh L. M. Co. v. Grant,* 152 Ala. 456; *State, ex rel. v. Skeggs,* 154 Ala. 257. To give the act the construction contended for by the state would render it violative of section 45 Constitution of the United States. —*Ex parte Gayle,* 108 Ala. 516; *Randolph v. Builders Co.,* 106 Ala. 507; *Ballantyne v. Wickersham,* 75 Ala. 356; *Sheffield Co. v. Poole,* 53 South. 1027; *Bell v. State,* 115 Ala. 88; *Sanders Case,* 117 Ala. 543. The courts never give an act such a construction as will render it violative of the Constitution when it can give it any other reasonable construction.

A. D. PITTS, and R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for appellee. Cotton seed meal is required to be tagged under the laws governing the sale of fertilizer.—*State v. Law Lamar* in MSS.; *Youngblood v. B'ham Co.* The Code was adopted by an act which provided that no act passed after a certain time shall be repealed or affected in any manner by the adoption of the Code, and that all acts of a general nature passed after a certain time shall be incorporated in the Code imparts no validity to it for the reason that it became a law after the act adopting the Code was enacted, and hence, the act must be construed as originally adopted.—*State ex rel. v. Miller,* 158 Ala. 59; *Fulton v. State,* 54 South. 688; *City of Montgomery v. Walsh,* 53 South. 786. The subsequent statutes must operate as a repeal, although it contains no express words of repeal.—*Ogburn v. Ogburn,* 60 Ala. 616; *Cahall's Case,* 61 Ala. 232; *Lemay v. Walker,* 62 Ala. 39; *Scott v. Simpson,* 70 Ala. 352.

MAYFIELD, J.—The complaint in this case was as follows: "The plaintiff claims of the defendant the sum of twelve hundred and fifty dollars ($1,250) for merchandise, goods, and chattels sold by the plaintiff to the defendant on the 1st day of December, 1911, which sum of money, together with the interest thereon, is due and unpaid, and is the property of the plaintiff."

The sole plea thereto was as follows: "No. 1. The defendant for answer to the complaint in this cause says that the goods, merchandise, and chattels mentioned in said complaint consist exclusively of cotton seed meal containing $7\frac{1}{2}$ per cent. of ammonia, and that the same was sold and delivered by plaintiff to defendant in the state of Alabama in bags for fertilizing purposes, and that neither at the time of said sale or delivery thereof did the packages containing the same have attached thereto the Alabama tax tags prepared by the Commissioner of Agriculture and Industries, under the provisions of section 28 of the Code of Alabama, and commonly known as the 'Fertilizer Tax Tags,' and that said sale and delivery was in violation of criminal section 6881 of the Code of Alabama. [Signed] A. D. Pitts, Defendant's Attorney."

A demurrer was interposed to this plea, assigning the following grounds: "(1) For that the fact that said tax tags were not attached to said packages containing said meal constitutes no defense to the complaint. (2) For that said plea sets up no legal defense to the complaint. (3) For that there is no provision of law requiring that such tax tags shall be attached to packages containing cotton seed meal containing $7\frac{1}{2}$ per cent. of ammonia sold for fertilizing purposes. (4) For that such meal is exempted from said tag tax under provisions of section 45 of the Code. (5) For that such failure to so attach such tax tags is not a violation of

section 6881 of the Code, or any other criminal statute of this state.    [Signed] Reese & Reese, Plaintiff's Attorneys."

The case was submitted to the court for judgment upon this demurrer, and the following judgment was entered by the trial court, from which judgment this appeal is prosecuted: "This cause being submitted upon the plaintiff's demurrer to plea No. 1, and the court having considered said demurrer, it is considered and adjudged by the court that in obedience to the ruling of the Court of Appeals of Alabama, made at the November term, 1911, of said court in the case of the *State of Alabama v. Law Lamar, Jr.*, MSS., the said demurrer be and it is hereby overruled.  And, the plaintiff declining to plead further, it is considered and adjudged by the court that the defendant have judgment of his said plea and go hence and recover of the plaintiff the costs in this behalf expended, for which execution may be issued. And the plaintiff excepted to the judgment of the court.'

The sole question presented to us for review is this: Was the plea sufficient, or was it subject to the demurrer interposed?  We hold that it was no answer to the complaint and was subject to the demurrer interposed; and therefore that the trial court erred in overruling the demurrer, and that plaintiff properly declined to plead further, suffering judgment final thereon, to the end of having the error corrected on appeal.  If there is any law in this state that requires all cotton seed meal containing $7\frac{1}{2}$ per cent. of ammonia to be tagged with fertilizer tags before the same is sold for fertilizing purposes, it is not embraced in either section 28 or section 6881 of the Code; and sales of such merchandise, therefore, are not rendered void by failure to comply with these statutory provisions.    Section 45 of the Code,

which is a codification of section 15 of the Acts of 1907, p. 75, reads as follows: "The term 'fertilizer material, used in this article shall nòt include common lime, land plaster, cotton seed meal, ashes, or common salt not in combination; and the term 'filler,' when used in this article, shall be understood to mean any foreign or make weight material used in the manufacture of any complete fertilizer." This provision in terms unquestionably excludes cotton seed meal from the provisions of article 2 of chapter 2 of the Code, relating to the registration and tagging of commercial fertilizers. There is another article in the Code, under the same chapter, which relates exclusively to regulations of the sale of cotton seed meal; and there are other cognate statutes. See Acts 1907, p. 273. Article 2 of chapter 2 is a codification of the various acts of the Legislature, and chiefly of the act of August 14, 1907 (Acts Gen. Sess. p. 744 et seq.) which expressly revised previous laws on the subject, which article relates to, and regulates, the sale of commercial fertilizers other than cotton seed meal, lime, land plaster, ashes, and salt when not in combination. There have likewise been passed a number of statutes relating exclusively to cotton seed meal. These were also codified, but under a separate article, so as not to be confused with acts containing regulations as to other fertilizers or fertilizing materials. The act of November 22, 1907 (Acts Sp. Sess. 1907, p. 20), was such an act. This act was passed, of course, after the Code was printed, and does not have place therein as does the act of August 14, 1907, which last-mentioned act was not, strictly speaking, a part of the Code proper as adopted, for the reason that the Code was first adopted by an act passed July 27, 1907. But the act adopting the Code required the commissioner to place in the printed

[Imperial Cotton Seed Oil Co. v. Shanks.]

Code all acts of a general nature which had been and might be passed at the current session.

All such statutes, however, as has been repeatedly pointed out, are laws, by virtue of the acts themselves, and not by virtue of the fact of being embraced in the Code. They are not a part of the Code proper because printed in the Code. See act adopting Code, preface, vol. 1, p. 1, Code. For the purpose of incorporating into the Code proper these later acts thus placed in the bound volumes of the Code, an act to that specified end was passed August 26, 1909 (Acts 1909, p. 174). To apply these principles to the concrete case in hand, article 2 of chapter 2 of the Code (sections 24-48) was no part of the Code proper prior to August 26, 1909, for the reason that it was a mere compilation of statutes passed after the Code was adopted, but required to be placed in the printed volumes by the act which first adopted the Code. But this article did become a part of the Code proper, after the printed volumes were adopted as the Code, by the act of August 26, 1909. So this article, as a part of the Code, is subsequent in date to the act passed at the Special Session 1907 of date November 22, 1907 (Acts Sp. Sess. 1907, p. 20), which was construed by the Court of Appeals in the case of *State v. Lamar*, 5 Ala. App., 259, 59 South. 737. The fact that this article of the Code (sections 24-48) was not a part of the Code proper as originally adopted but became such only by the act readopting it, passed at the session of 1909 (Acts 1909, p. 174), seems not to have been called to the attention of the court, and was not considered by the Court of Appeals in the opinion in the decision indicated. It therefore follows that section 28 of the Code has no application to the registration or tagging of cotton seed meal, this subject being expressly exempted from the operation of this article by section 45 of the

Code, and being expressly provided for by article 3 of chapter 2 of the Code and a number of special acts passed at the special sessions of 1907 and 1909. The plea interposed in this case was bad, however, if article 2 of chapter 2 of the Code could be said to relate to cotton seed meal. It was certainly not necessary that the cotton seed meal be tagged as required by section 28 of the Code. That section does not require that any fertilizers be tagged, but merely provides the method of supplying tags required to be placed upon the bags or parcels of fertilizer. If cotton seed meal is to be registered and tagged before it is sold or offered to be sold as a fertilizer, it is by virtue of acts and laws other than section 28 of the Code, or than article 2 of chapter 2, of which section 28 forms a part. See article 3 of chapter 2 of the Code, and Acts Special Session 1907, p. 20 et seq., and Acts General Session, p. 273 et seq. By reference to these laws it is made certain, we think, that the sale of cotton seed meal as a fertilizer is now governed and controlled by an entire and different system of laws from that relating to other fertilizers and fertilizer materials. What effect the two acts adopting the Code of 1907—that of July 26, 1907 (preface Code, vol. 1, p. 1) and that of August 26, 1909 (Acts 1909, p. 174)—had upon these acts above referred to, and the constitutionality vel non of any of these acts, including that of November 22, 1907 (Acts Sp. Sess. 1907, p. 20), construed by the Court of Appeals in *Lamar's Case*, we need not and do not decide. We have, however, been referred by counsel to this case, and the trial court seems to have relied upon it; and for this reason we have examined the record, the opinion, and the briefs in the case. It appears from the record and from the briefs on file in that case that the questions presented to that court for consideration were the constitutionality of

[Imperial Cotton Seed Oil Co. v. Shanks.]

section 5 of the act "To regulate the sale of cotton seed meal," and, if constitutional, the effect of the act at the time of its adoption. It may be that the Court of Appeals properly construed the law as it existed between the act adopting the Code in 1907, and the act readopting the Code in 1909 (a question not presented to us by this record) ; but the fact that the Code was readopted in 1909, and the effect of such readoption of the Code were matters not presented by counsel to the Court of Appeals in their briefs in the case, and were not discussed nor considered in the Court of Appeals in the stated case. It therefore appears that the questions upon which we base this decision were not presented to, nor discussed before, the Court of Appeals in that case.

It follows from what is said above that if the sale of cotton seed meal in this case was, as set up in the plea, a violation of the statutes of this state, it was of sections 49 and 6887 of the Code, and not of sections 28 and 6881, which relate to fertilizers other than cotton seed meal, lime, ashes, etc.; or of other statutes not in the Code, notably section 4 of the act of November 22, 1907 (Sp. Sess. p. 20). As to this question, however, we do not intimate any opinion, because not necessary, and because the constitutionality of some of these acts is assailed on this appeal.

Court will never pass upon the constitutionality of statutes unless necessary to a decision of a cause, and will never hold them unconstitutional if such construction can be reasonably avoided.

Reversed and remanded. All the Justices concur.